STEVEN G. KALAR
Federal Public Defender
RITA B. BOSWORTH
Assistant Federal Public Defender
55 South Market Street, Suite 820
San Jose, CA 95113
Telephone:     (408) 291-7753
E-mail:        rita_bosworth@fd.org

Counsel for Defendant JOSE LEMUS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOSE LEMUS, <br><br> Defendant. | No. CR-16-00363 LHK <br><br> **DEFENDANT'S SENTENCING MEMORANDUM** <br><br> Date: Wednesday, January 11, 2017 <br> Time: 9:45 a.m. <br> Court: Honorable Lucy Koh |

## **INTRODUCTION**

Mr. Lemus waived his right to indictment and pled guilty, pursuant to a written plea agreement, to one count of armed bank robbery, a violation of 18 U.S.C. §§ 2113(a), (d).  He submits that a downward variance to 24 months, to run concurrent to his state sentence, is appropriate in this case.  Such a variance is warranted because Mr. Lemus is currently serving a state sentence of 76 months for a bank robbery that he committed after the instant offense.  Had the two offenses been prosecuted together in federal court, he would have faced an advisory guideline range of 70 to 87 months *for both offenses*.  Instead, because of the timing of the prosecutions, he faces 76 months in the state case plus a recommended 63 months in the

instant case.  Serving 139 months for these two offenses is a sentence that is far greater than necessary given the sentencing factors in this case.  To remedy the unwarranted disparity that would result if he got a guideline sentence in this case, he submits that a downward variance and concurrent time is appropriate.

**BACKGROUND**

Jose Lemus is a 24-year-old United States citizen who grew up in King City and Salinas, California.  PSR ¶42.  He and his siblings were raised by a single mother; Jose had no relationship with his father, an alcoholic who died of cirrhosis of the liver.  *Id.*  When Jose was a child, his mother worked as a caregiver, but she also sold drugs.  *Id.*  ¶44.  Jose recalls his mom sending the kids out of the house whenever she was selling.  *Id.*  When he was nine or ten years old, his mother was convicted of a drug-related crime and sent to prison.  *Id.* ¶45.  Jose and his siblings were sent to live with their mother's aunt and uncle until their mother was released.  *Id.*

As a child, Jose did well in school and was involved in sports.  PSR ¶47.  For as long as he can remember, however, he was exposed to gang-related violence.  *Id.*  He was constantly in the presence of gang members, both from his neighborhood and from his own family.  When his mother was released from prison, she tried to become a stricter and more responsible parent, but Jose had already become involved with the gang and lost interest in school.  *Id.* ¶48.  He has been using marijuana since he was ten years old, up until the day he went into custody.  *Id.* ¶52.  He dropped out of school in 11th grade, a decision he now regrets, but he completed his GED while in custody. *Id.* ¶53.  He has been in custody since February 14, 2012. *Id.* ¶52.  Despite being in custody for most of his adult life, he does have a history of employment at two different jobs from 2010 to 2011.  *Id.* ¶¶ 54-55.

1

## DISCUSSION

2

3

**A. Mr. Lemus should receive a sentence of 24 months, to run concurrent to his state sentence, to account for the 76-month state sentence he already received.**

4

The instant offense occurred on August 22, 2011, when Mr. Lemus was 18 years old. PSR ¶5.

5

However, he was not prosecuted for this offense until five years later in 2016. *Id.* ¶1. At the time this

6

case was charged, Mr. Lemus was serving a state sentence for a bank robbery that occurred on February

7

14, 2012, approximately six months after the instant offense. PSR ¶36. Mr. Lemus pled guilty in that

8

case and was sentenced to six years and four months of prison, or 76 months. *Id.* He is due to complete

9

that sentence on March 2, 2018. *Id.* ¶4.

10

11

Had Mr. Lemus pled guilty to the 2012 bank robbery in federal court, his guidelines would have

12

been as follows:

13

Base Offense Level, §2B3.1(a)                        20

14

Property of Financial Institution, § 2B3.1(b)(1)     +2

15

Firearm brandished/possessed, §2B3.1(b)(2)(c)        +5

16

Acceptance of Responsibility, §3E1.1(b)              -3

17

Total Offense Level:                                 **24**

18

19

Had Mr. Lemus pled to both robberies at the same time in federal court, the two offenses would be

20

combined pursuant to § 3D1.4. With a total offense level of 25 for the 2011 robbery and 24 for the 2012

21

robbery, his combined grouped offense level for both offenses would be **27**.[1] In addition, had the offenses

22

23

---

24

[1] Pursuant to U.S.S.G. § 3D1.2, robbery offenses cannot be grouped. Section 3D1.4 explains

25

how to calculate the combined offense level for multiple offenses: "the combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated in the following table." The table

26

illustrates that each of the two robbery offenses counts as one "unit" because their respected offense levels, 24 and 25, are within 4 levels of one another. With a total of two units, Mr.

27

Lemus's highest base offense level (25) is increased by two levels to account for both offenses, resulting in a combined offense level of 27.

28

been prosecuted at the same time, he would have had no prior convictions, and his criminal history category would be I.  This means that had both robberies been prosecuted together in federal court, his advisory guideline range for both would be 70 to 87 months.

Mr. Lemus recognizes that it was perfectly legal for the state to prosecute him for the 2012 robbery and for the federal government to subsequently prosecute him for the 2011 robbery.  And he recognizes that the advisory guideline range for the instant offense, given the fact that he has already been convicted of the 2012 robbery, has been properly calculated as 63 to 76 months.  But if the Court were to impose the low-end sentence of 63 months to run consecutive to his state sentence, that means he will serve a total of 139 months for both offenses.  This is **double** the amount of time that would have been recommended had the cases been prosecuted together in federal court.  He is not contesting the validity of any of the prosecutions, but he submits that under these unique circumstances, an advisory guideline sentence in this case is greater than necessary.

Imposing a sentence of 63 months would produce unjustified sentencing disparities between Mr. Lemus and similarly situated defendants who committed the exact same two crimes but were prosecuted for both in federal court rather than one in state court and one in federal court.  To avoid this unjustified disparity, the Court should impose a downward variance and concurrent time in a way that would align with what the advisory guidelines recommend for two robberies.  Here, taking as a marker the high-end advisory range of 87 months that would be in place had the two offenses been prosecuted together in federal court, Mr. Lemus suggests a sentence of 24 months to run concurrent to his state sentence.  Mr. Lemus's state sentence is complete in approximately 13 months.  PSR ¶4 (completion date is March 2, 2018).  If this Court imposes a sentence of 24 months to run concurrent, Mr. Lemus will serve an additional 11 months on top of the 76-month state sentence, which would bring him to 87 months—the high end of the advisory guideline that would have been imposed had both his cases been prosecuted together in federal court.  It is rare for a defendant to advocate for a high-end sentence, but under these

circumstances, and given the seriousness of the offenses, he agrees that a total sentence of 87 months is warranted.  To accomplish that, the Court must vary downward.

**B.  The 3553(a) Sentencing Factors Weigh in Favor of a Downward Variance.**

While "[a]ll sentencing proceedings are to begin by determining the applicable Guidelines range," the Guidelines are only "one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (citations omitted).  The sentencing court "may not presume that the Guidelines range is reasonable," and the Guidelines should not be accorded more weight than any other 18 U.S.C. § 3553(a) factor. *Id.; see also United States v. Cantrell*, 433 F.3d 1269, 1279-80 (9th Cir. 2006).  Under § 3553, the district court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant," *see* 18 U.S.C. § 3553(a)(1), and must "'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment," *Carty*, 520 F.3d at 991 (citing 18 U.S.C. § 3553(a) and (a)(2)).  Here, the factors under §3553(a) demonstrate that a concurrent sentence of 24 months, followed by a term of supervised release, is sufficient but greater than necessary to accomplish all the goals of sentencing.

*First*, the nature of the offense is serious.  Mr. Lemus in no way denies that.  Bank robbery is a dangerous offense that has the potential to harm people, particularly when a weapon is involved.  However, there are a number of circumstances in this particular case that mitigate Mr. Lemus's culpability.  While he has accepted responsibility for the involvement of a firearm, he himself was not the one carrying the firearm.  He understands that this makes no difference legally, and he has accepted a 5-level increase in his base offense level because his co-conspirator had a firearm.  But it is significant that he was not the one carrying it, and it is also significant that nobody was physically harmed during the

course of the robbery.  Indeed, one of the tellers noted that Mr. Lemus "appeared nervous and that his hands were shaking, unlike the gunman who was acting authoritative."  PSR ¶8.  Mr. Lemus was 18 years old when this occurred, he had never been charged with or convicted of a crime in his life, and he had fallen under the influence of gang members.  *Id.* ¶47.  The offense is serious, but the facts mitigate Mr. Lemus's involvement.

*Second*, even though Mr. Lemus receives three criminal history points for his 2012 robbery conviction, that conviction occurred after the instant offense.  Mr. Lemus is already serving a lengthy sentence of 76 months for that offense, and that conviction alone enhances his criminal history category from I to II.  Again, Mr. Lemus is not contesting that the criminal history points technically apply.[2]  However, under the unique circumstances of this case where his two robbery offenses were prosecuted in different jurisdictions, he is being punished twice for the same conduct (state sentence plus enhanced advisory guideline range).  In addition, the fact is that he did not in fact have any criminal history at the time he committed this offense.

*Third*, Mr. Lemus's history and characteristics mitigate in favor of a downward variance.  Mr. Lemus was only 18 years old when he committed this offense.  He had no prior convictions, nor did he have so much as an arrest or charge.  According to a witness to the robbery, he was nervous when committing the crime, as compared to the "authoritative" gunman.  Mr. Lemus grew up without a father.  His mother sold drugs to support them, and he was regularly told to leave the house so she could conduct drug sales.  His mother eventually was jailed for selling drugs, and he went to live with relatives where he was treated as a burden.  While he enjoyed school and participated in sports as a child, things changed after his mom went to prison.  He started skipping school and got involved in gangs.  In his words: "One day I went from good grades to not going to school; from sports to gangs."  PSR ¶47.  His involvement in

---

[2] U.S.S.G. § 4A1.2 states: "The term 'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense."

gangs was unfortunate but not surprising.  His family, his neighbors, and the people in his community were involved in gangs.  As he acknowledges, it was not hard, because he "grew up with it" around him. *Id.*  While none of these factors can excuse Mr. Lemus' conduct, they do put his actions into context.  He is only 24 years old, but he has been incarcerated since he was 20, the majority of his adult life.  He received a stiff sentence in state court and if he receives an advisory guideline sentence in this case, he will not get out of prison until he is 31.  Given his history, such a sentence would be greater than necessary.

*Fourth*, Mr. Lemus has fully and completely accepted responsibility in this case.  He agreed to proceed by information, waiving his right to indictment.  PSR ¶ 1.  He did not file motions, he did not set a trial date, he did not make further discovery requests, and he accepted the plea agreement proposed by the government.  Indeed, this is a case where the government's evidence was scant.  There were no identifications, no forensic evidence, no video surveillance.  It is a case that could easily have gone to trial.  But Mr. Lemus quickly accepted responsibility and chose to plead guilty, knowing that he faced an additional five to seven years for doing so.  He has saved the government resources and demonstrated a mature approach to owning his actions.  This is an indicator that he is a good candidate for rehabilitation and the Court should look favorably on how he has conducted himself in this case.

*Fifth*, Mr. Lemus is agreeing that a lengthy three-year sentence of supervised release is appropriate.  The Court must fashion a sentence that addresses the circumstances of each individual defendant.  Here, Mr. Lemus has demonstrated that he intends to comply with supervision, and it will benefit him to have access to the resources the probation department has to offer, such as help with job placement.  Three years of supervision after his period of incarceration will keep him under the watch of the Court for a significant period of time.  He will know that if he violates, he can be sent back to jail, and if he succeeds, his likelihood of recidivism will continue to decrease.

It is important to consider the fact that the term of supervised release the Court imposes, while less onerous than imprisonment, is also a significant punishment.  As the sentencing court observed in *Gall v. United States*, 552 U.S. 38, 44 (2007), a probationary sentence is not "an act of leniency," but a "substantial restriction of freedom."  The court went on to explain:

> [The defendant] will have to comply with strict reporting conditions along with a three-year regime of alcohol and drug testing.  He will not be able to change or make decisions about significant circumstances in his life, such as where to live or work, which are prized liberty interests, without first seeking authorization from his Probation Officer or, perhaps, even the Court.  Of course, the Defendant always faces the harsh consequences that await if he violates the conditions of his probationary term.

*Id.*  The Supreme Court concurred, noting that probationers are "subject to several standard conditions that substantially restrict their liberty."  *Id.* at 48.  The same is true here.  *See* PSR Sentencing Recommendation at 2-3 (setting forth recommended conditions, including a suspicionless search condition).

## CONCLUSION

For the reasons set forth above, the defense respectfully requests that the Court sentence Mr. Lemus to a term of incarceration of 24 months to run concurrent with his state sentence, followed by three years of supervised release.

Date:   1/4/16

Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender

/s/  *Rita B. Bosworth*

RITA B. BOSWORTH
Assistant Federal Public Defender